IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CURTIS JURVISKY JULIUS, | ) |
| | ) |
| Petitioner, | ) |
| | ) Case No. 2:19cv267-LSC-CWB |
| v. | ) (WO) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. (Doc. 1).[1] Petitioner Curtis Jurvisky Julius ("Julius") challenges the May 2018 Order of the district court revoking his supervised release and sentencing him to 24 months' imprisonment. (*Id*.). For the reasons discussed below, the undersigned recommends that Julius's § 2255 petition be denied without an evidentiary hearing and that this action be dismissed with prejudice.

**I. Background**

  **A.  Conviction in Case No. 2:07cr316 (2008)**

In December 2007, a grand jury in the Middle District of Alabama returned a one-count indictment charging Julius with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Crim. Doc. 1). On June 8, 2008, Julius pled guilty to the § 922(g)(1)

---

[1] References to documents filed in this case (2:19cv267) are designated as "Doc." References to documents filed in the underlying criminal case (2:07cr316) are designated as "Crim. Doc." References to documents filed in the separate, related criminal case (2:17cr385) are designated as "Crim.-II Doc." All pinpoint citations refer to page numbers affixed electronically by the CM/ECF filing system and do not correspond to pagination on the copies as presented for filing.

charge.  (Crim. Docs. 28 & 29).  On November 25, 2008, the district court sentenced Julius to 50 months' imprisonment, to be followed by three years of supervised release.  (Crim. Doc. 44).  The district court entered its judgment on December 2, 2005.  (Crim. Doc. 46).  Julius did not appeal.

### B.      First Supervised-Release Revocation (2014)

In April 2012, Julius began his supervised release after completing his period of imprisonment in Case No. 2:07cr316.  (Crim. Doc. 51 at 1).  Approximately one year later, the United States Probation Office filed a petition to revoke Julius's supervised release, alleging that he violated the conditions of release by failing to inform his probation officer he had moved and by failing to report to his probation officer as required.  (Crim. Doc. 51).  In March 2014, the Probation Office filed an amended revocation petition alleging additional violations by Julius; specifically, that he possessed a firearm and committed a new criminal offense by shooting into an occupied dwelling.  (Crim. Doc. 57).

In May 2014, Julius pled guilty to the violations alleged in the amended revocation petition.[2]  (Crim. Docs. 74 & 75).  On October 8, 2014, the district court entered an order revoking Julius's supervised release and sentencing him to 24 months' imprisonment to be followed by one year of supervised release.  (Crim. Docs. 100 & 101).  Julius did not appeal.

### C.      Second Supervised-Release Revocation (2016)

In February 2015, Julius began his term of supervised release after completing his revocation sentence in Case No. 2:07cr316.  (Crim. Doc. 109 at 1). In December of that year, the Probation Office again filed a petition to revoke Julius's supervised release—alleging that he

---

[2] Under the plea agreement, the government agreed not to bring further charges against Julius arising from any conduct alleged in the amended revocation petition.  (Crim. Doc. 74 at 3).

violated the conditions of his release by committing a new criminal offense, *i.e.*, domestic violence in the third degree. (Crim. Doc. 109). In February 2016, Julius pled guilty to that violation. The district court revoked his supervised release and sentenced him to 60 days' imprisonment, which amounted to time served, to be followed by one year of supervised release. (Crim. Docs. 144 & 145). Julius did not appeal.

### D. Third Supervised-Release Revocation in Case No. 2:07cr316 and Conviction in Case No. 2:17cr385 (2018)

In December 2016, the Probation Office filed another petition to revoke Julius's supervised release in Case No. 2:07cr316, this time alleging that he violated the conditions of his release by: (1) possessing a firearm; (2) committing a new criminal offense, *i.e.*, assault in the second degree; and (3) failing to report to his probation officer. (Crim. Doc. 153). In August 2017, the Probation Office filed an amended petition removing the assault allegation but asserting additional violations, *i.e.*, that Julius had committed other new criminal offenses by shooting into an occupied building and, in two separate instances, by possessing a firearm as a convicted felon. (Crim. Doc. 158). In September 2017, the Probation Office filed a second amended petition to reinstate the assault allegation and to further allege that Julius had committed yet another new criminal offense, *i.e.*, domestic violence. (Crim. Doc. 171).

The felon-in-possession allegations in the amended revocation petition served as grounds for an indictment that was returned against Julius in August 2017 (Case No. 2:17cr385), in which he was charged with two counts of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Crim.-II Doc. 16). In October 2017, the district court granted Julius's

motion to have his revocation hearing in Case No. 2:07cr316 held concurrently with his trial in Case No. 2:17cr385, which was scheduled for February 2018.[3]  (Crim. Docs. 176, 177).

Trial in Case No. 2:17cr385 started on February 1, 2018.  (Crim.-II Doc. 105). After the close of evidence but before closing arguments, Julius indicated to the district court that he wanted to plead guilty rather than proceed with the trial.  (Crim.-II Doc. 105 at 160). The district court then conducted a plea colloquy under Fed. R. Crim. P. 11.  (Crim.-II Doc. 105 at 161–73). Per the terms of an oral plea agreement, Julius pled guilty to Count 1 of the indictment in exchange for the government's moving to dismiss Count 2.  Following the guilty plea, the district court reset Julius's supervised-release revocation hearing in Case No. 2:07cr316 to coincide with his sentencing hearing in Case No. 2:17cr385, which was set for May 17, 2018.[4]  (Crim.-II Doc. 105 at 173).

At Julius's combined sentencing/supervised-release revocation hearing on May 17, 2018, the district court sentenced Julius to 84 months' imprisonment in Case No. 2:17cr385, to be followed by three years of supervised release.  (Crim.-II Doc. 106 at 13; Crim. Doc. 194 at 13). Finding that Julius's guilty plea to the felon-in-possession charge rendered him guilty in his

---

[3] The motion to have the revocation hearing (Case No. 2:07cr316) held concurrently with trial (Case No. 2:17cr385) was filed by attorney Michael L. Kidd, who was representing Julius in both matters.  Kidd withdrew as Julius's counsel in December 2017 and was replaced by attorney Preston L. Pressley.

[4] After accepting Julius's guilty plea and adjudging him guilty, the district court stated:

> We'll set you up for sentencing. We will invite you to come back—and I'll take up the issue of revocation of his supervised release at that time, because it's going to be material whether I run it concurrent or consecutive and I need to see everything when I do. And he's not losing anything by his waiting until then.

Crim.-II Doc. 105 at 173.

supervised-release case, the district court revoked Julius's supervised release in Case No. 2:07cr316 and sentenced him to 24 months' imprisonment, to be served consecutively to the 84-month sentence imposed in Case No. 2:17cr385. (Crim.-II Doc. 106 at 9–10, 13; Crim. Doc. 194 at 9–10, 13; Crim. Doc. 186).

On May 24, 2018, Julius's counsel filed a notice of appeal as to the felon-in-possession conviction in Case No. 2:17cr385. (Crim.-II Doc. 97). That same day, through the same counsel, Julius also filed a notice of appeal as to his supervised-release revocation in Case No. 2:07cr316. (Crim. Doc. 187.)

On June 22, 2018, the Eleventh Circuit dismissed Julius's appeal in Case No. 2:07cr316 for failure to prosecute. (Crim. Doc. 191). As to the appeal of his conviction in Case No. 2:17cr385, the Eleventh Circuit likewise entered a dismissal—holding that, by pleading guilty in the district court, Julius had waived his right to assert that the district court erred by preventing him from presenting a justification defense at trial. (Crim.-II Doc. 109).

E.      **Julius's § 2255 Petition**

Julius filed this § 2255 petition on April 9, 2019, asserting that his counsel for the supervised-release revocation proceeding in Case No. 2:07cr316 rendered ineffective assistance by: (1) "failing to investigate, gather evidence, and interview [and] subpoena witnesses" and then "cancelling" his revocation hearing without his consent; and (2) abandoning him on appeal from the revocation of his supervised release by failing to file an appellate brief. (Doc. 1 at 4–5, 13–18).

## II. Discussion

### A. Legal Standard

A prisoner is entitled to relief under § 2255 when the trial court has imposed a sentence that: (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum authorized by law; or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255. *See also McKay v. United States*, 657 F.3d 1190, 1194, n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). If a court determines a prisoner is entitled to § 2255 relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The burden to establish that vacatur of the conviction or sentence is required falls upon the prisoner. *Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017).

### B. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated under the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See also Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted).  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

Under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus exclusively on the underlying outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.").  However, "[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required under both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Thus, once a court decides that one of the requisite showings has not been made, it need not examine the other. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1. Failure to Investigate, Gather Evidence, and Interview/Subpoena Witnesses and Cancellation of the Revocation Hearing

Julius claims that counsel rendered ineffective assistance in the supervised-release revocation proceeding by "failing to investigate, gather evidence, and interview [and] subpoena witnesses" and by "cancelling" his revocation hearing without consent. (Doc. 1 at 4, 13–17). Julius's allegations appear to concern attorney Michael L. Kidd, who represented him until being permitted to withdraw as counsel in December 2017. (Crim.-II Docs. 52 & 55).

First, the court finds Julius's allegation that his revocation hearing was cancelled to be unsupported. The record instead reflects that the revocation hearing in Case No. 2:07cr316 was held on May 17, 2018 concurrently with the sentencing hearing in Case No. 2:17cr385. (Crim.-II Doc. 106; Crim. Doc. 194). Thus, a claim for ineffective assistance cannot be based upon a "cancellation" of the revocation hearing.

Second, Julius alleges that counsel failed to interview and present testimony from several witnesses at the revocation hearing. (Doc. 1 at 13–15). According to Julius, such witnesses would have provided testimony in support of a defense of "justification," *i.e.*, that his possession of a firearm was justified for self-protection because he was under a threat of death from other individuals. (*Id*.). It is clear from the record, however, that the district court would not have allowed Julius to assert a justification defense in his supervised-release revocation proceeding and that counsel's alleged failures therefore could not serve as the basis for an ineffective assistance claim.

Before Julius's trial in Case No. 2:17cr385, the government moved *in limine* to exclude evidence regarding Julius's anticipated justification defense.[5] (Crim.-II Doc. 24). The district

---

[5] After he began representing Julius, attorney Preston L. Pressley filed a trial brief confirming that Julius intended to pursue a justification defense at trial. (Crim.-II Doc. 68).

court conditionally granted the government's motion—requiring Julius to obtain the court's permission before introducing evidence or argument of justification in the presence of the jury. (Crim.-II Doc. 105 at 10). At trial, Julius proffered his own testimony outside the presence of the jury regarding the justification defense. (Crim.-II Doc. 105 at 119–44). However, the district court determined that the testimony was insufficient to satisfy the elements for a justification defense. (Crim.-II Doc. 105 at 148–49). Julius subsequently pled guilty to one of the felon-in-possession counts, and the second count was dismissed.

Under such circumstances, it is sufficiently clear that the district court would not have allowed Julius to pursue a justification defense at his revocation hearing, which took place after he pled guilty to the felon-in-possession charge. The district court effectively stated as much at the revocation hearing, where it was recognized that the guilty plea in 2:17cr385 left open no potential defense to the revocation charge in Case No. 2:07cr316:

> THE COURT: And let me say this for the record. There is a revocation pending. And just so we can do them all at the same time, let's go ahead and make sure that we all understand this. He was, at the time of the occasion when he possessed the firearm charged in this particular case, on supervised release on another case, which was 07-316. He had an original criminal history category of—was it VI, Probation?
>
> PROBATION OFFICER HUMBER: It was III at that time, Your Honor.
>
> THE COURT: Okay. I see it now. III. And this is a grade A violation. So when you combine a criminal history category III and a grade A violation, there is an advisory guideline revocation range of 18 to 24 months. The maximum term would be 24 months based on his previous conviction that he could get; right?
>
> PROBATION OFFICER HUMBER: Correct, Your Honor.
>
> THE COURT: All right. So he's not served any additional revocations up to this point?
>
> PROBATION OFFICER HUMBER: He has, Your Honor. This would be his third revocation hearing in that case.

9

> THE COURT: But there's still 24 months left?
>
> PROBATION OFFICER HUMBER: Yes, Your Honor.
>
> THE COURT: All right. *So I just want you to know that your guilty plea obviously put you in a situation where you're also in violation of the supervised release, so I've got to decide what to do with that.* I don't have to run it concurrent. I can run it consecutive. As a matter of fact, I generally run those consecutive, not concurrent, because it's two separate situations. But regardless, I intend to sentence you to both the old case, the supervised release violation, and the new case. And so whenever you tell me anything, I want you to make sure to cover anything you want to cover on your supervised release. So any statement of mitigation or why you should not be sentenced or how I should sentence you or anything like that needs to deal with both cases. Do you understand that?
>
> THE DEFENDANT: Uh-huh.
>
> THE COURT: All right. Is that a yes?
>
> THE DEFENDANT: Yes, sir.

(Crim.-II Doc. 106 at 9–11) (emphasis added). The court thus finds that a justification defense, even if raised at the revocation hearing, would not have been permitted or successful.

Moreover, challenges based upon uncalled witnesses are disfavored. *Sanders v. United States*, 314 F. App'x 212, 213 (11th Cir. 2008). "This is especially true because allegations of what a witness would have testified are largely speculative." *Jones v. McNeil*, WL 1758740, at *6 (S.D. Fla. June 22, 2009). "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Because Julius does not present potentially exculpatory information or proffered testimony, in any form, from the potential witnesses referenced in his § 2255 motion, he cannot demonstrate prejudice for purposes of a claim for ineffective assistance of counsel.

Finally, to the extent Julius contends that counsel conducted an inadequate investigation, he likewise must demonstrate what information would have been obtained through further investigation and whether it likely would have produced a different outcome in the proceedings. *See Palmer v. Clarke*, 408 F.3d 423, 445 (8th Cir. 2005); *United States v. Price,* 357 F. Supp. 2d 63, 67–68 (D.D.C. 2004). Here, Julius provides no identifiable, specific facts showing that counsel's investigation was professionally unreasonable or that he was prejudiced.

### 2. Abandonment by Counsel on Appeal

Julius additionally alleges that his second attorney, Preston L. Pressley, provided ineffective assistance by failing to file an appellate brief in his supervised-release revocation case. (Crim. Doc. 187). The record reflects that Pressley filed a notice of appeal in Case No. 2:07cr316 on May 24, 2018 (Crim. Doc. 187),[6] which was docketed but later dismissed for want of prosecution on grounds that Julius had failed to either pay the filing and docketing fees to the district court or move to proceed *in forma pauperis* and to file a transcript order form within the time fixed by the Eleventh Circuit's rules. (Crim. Doc. 191). Julius thus contends that Pressley "abandoned" him on appeal, which led to the dismissal.[7] (Doc. 1 at 18).

A central flaw with Julius's argument, however, is that he does not allege that he ever asked Pressley to file an appeal in his revocation case. The record instead reflects that the appeal was filed on the initiative of Pressley alone and was neither requested by, nor or discussed with, Julius. In an affidavit filed with the district court, Pressley stated: "Mr. Julius never directed counsel to

---

[6] Pressley filed a notice of appeal as to Julius's felon-in-possession conviction in Case No. 2:17cr385 the same day. (Crim.-II Doc. 97).

[7] According to Julius, the appeal in Case No. 2:07cr316 was dismissed due to Pressley's failure to file a brief. However, at the time the appeal was dismissed, Pressley had not yet been ordered to file a brief.

file an appeal as to the case at hand or the revocation[.]"; "Mr. Julius never has submitted to counsel at any point that he wanted to appeal his revocation conviction."; "Indeed, counsel vehemently denies ever discussing an appeal as to the revocation in this matter at any time during his representation of Mr. Julius." (Doc. 9 at 2). Although afforded an opportunity to respond to Pressley's affidavit, Julius filed no response.

Because there is no meaningful distinction between counsel whose inaction results in dismissal of an appeal and counsel who fails to file any appeal at all, *see, e.g., Fern v. Gramley*, 99 F.3d 255, 259 (7th Cir. 1996), the question here is whether it would have constituted ineffective assistance of counsel had Pressley not filed an appeal in Julius's revocation case. In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the United States Supreme Court applied the two-part *Strickland* test to determine whether counsel was ineffective for failing to file an appeal. Regarding the first part of *Strickland*—whether counsel's representation fell below an objective standard of reasonableness—the Supreme Court held that "an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." *Gomez-Diaz v. United States*, 433 F.3d 788, 791–92 (11th Cir. 2005) (citing *Flores-Ortega*, 528 U.S. at 477). In such cases, prejudice is presumed, and the petitioner is entitled to a new appeal with no further showing. *Flores-Ortega*, 528 at 483 ("The . . . denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, . . . demands a presumption of prejudice."). Here, however, the record is devoid of any evidence that Julius made such a request as to an appeal of his revocation case or that Julius was even aware such an appeal had been filed.

When, as here, a defendant does not made a specific request for counsel to file an appeal, counsel nonetheless generally must "consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant in the defendant's position would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480; *see also, e.g., Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007). Julius, however, has failed to establish that there were any nonfrivolous grounds upon which he could have appealed his revocation. Julius also has failed to present any evidence that he reasonably demonstrated to Pressley an interest in appealing his revocation.

The allegations in Julius's § 2255 motion, when considered in light of the undisputed record, fail to create a genuine issue of fact as to whether Julius made a specific request to file an appeal in his revocation case, or that there were nonfrivolous grounds for an appeal in the revocation case, or that counsel ignored some demonstrated interest in appealing the revocation. Therefore, the Court finds it is unnecessary to conduct an evidentiary hearing, as "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

### III. Conclusion

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that Julius's § 2255 motion be DENIED and that this case DISMISSED with prejudice.

It is further ORDERED that, by August 18, 2022, the parties may file written objections to this Recommendation. An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection. Frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to this Recommendation shall bar a party from a de novo determination by the District Court of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 4th day of August 2022.

/s/
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**